# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL QUIROGA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>GREEN,<br><br>　　　　　Defendant. | ) 1:11cv00983 AWI DLB PC<br>)<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) REGARDING DEFENDANT GREEN'S<br>) MOTION FOR SUMMARY JUDGMENT<br>) (Document 43)<br>)<br>) THIRTY-DAY OBJECTION DEADLINE<br>)<br>)<br>) |

　　　　Plaintiff Manuel Quiroga ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's September 17, 2012, First Amended Complaint against Defendant Barry Green for violation of the Eighth Amendment.

　　　　Defendant filed a motion for summary judgment[1] on April 16, 2014.

　　　　After the time for filing an opposition had passed, the Court ordered Plaintiff to file an opposition, or a statement of non-opposition, within thirty days.  The order notified Plaintiff that if he failed to do so, the motion would be decided without his input.

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

Plaintiff filed his opposition on September 8, 2014.[2]

Defendant did not file a reply.

The motion is submitted upon the record without oral argument.  Local Rule 230(l).

## I.     LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

---

[2] Plaintiff's opposition is one page in length and is signed at the bottom of the page.  Plaintiff references "data attached," but there are no attachments to his opposition, nor does Plaintiff discuss, or cite to, any exhibits in the text of his opposition.  ECF No. 47, at 1.

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at the California Health Care Facility in Stockton, California.  The events at issue occurred while Plaintiff was housed at Pleasant Valley State Prison ("PVSP").

On June 16, 2008, Plaintiff underwent surgery on his right shoulder.  In August 2008, Plaintiff received morphine for severe pain and shoulder damage.

Plaintiff alleges that his surgery was unsuccessful, and that his shoulder was severely swollen, painful and had decreased mobility.  Another surgery was indicated and he was given morphine for pain.

On July 30, 2009, Plaintiff was "booked" for another surgery and continued to receive morphine for pain.  ECF No. 8, at 4.

On August 11, 2010, while Plaintiff was in severe pain and waiting for the surgery, Defendant Green discontinued Plaintiff's morphine without any explanation.  Plaintiff alleges that this caused him to go through painful and hard morphine withdrawals.

3

### III. UNDISPUTED MATERIAL FACTS[3]

Plaintiff was incarcerated at PVSP in 2010. ECF No. 8, at 4. Defendant Green worked as a Physician's Assistant at PVSP, and his responsibilities included evaluating and treating inmates and developing appropriate treatment plans. Green Decl. ¶ 2.

Defendant Green reviewed portions of Plaintiff's Unit Health Record ("UHR"), which indicates that he provided treatment to Plaintiff on August 11, 2010, and September 22, 2010. Green Decl. ¶ 3.

On August 11, 2010, Plaintiff saw Defendant Green in follow-up for Plaintiff's complaints regarding asthma, his inhaler and diabetes. During the visit, Plaintiff told Defendant Green that he also wanted a morphine refill for chronic right shoulder pain, as his prescription had expired three days prior. Plaintiff stated that he had been taking morphine for the past year for shoulder pain. Green Decl. ¶ 4.

During the visit, Plaintiff stated that he had asthma as a child and was using his inhaler frequently because he was having trouble breathing. Defendant Green's examination revealed normal vital signs and no apparent distress. Plaintiff exhibited no shortness of breath. As he listened to Plaintiff's lungs, Plaintiff intentionally made noises with his mouth to simulate breathing/lung problems. Green Decl. ¶ 5.

Plaintiff's UHR indicated a past shoulder surgery and that Plaintiff had been complaining of shoulder problems for a lengthy period of time. Defendant Green's examination of Plaintiff's bilateral shoulders revealed that there was no muscle wasting, and both shoulders were symmetrical. Green Decl. ¶ 8. Based on his experience and training, Defendant Green believed that if Plaintiff felt genuine pain, the mobility of his right arm would be limited and the muscles

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

would exhibit obvious signs of shoulder muscle wasting. Plaintiff did not exhibit any of these symptoms. Green Decl. ¶ 8.

Plaintiff also claimed extreme pain on light touch of his right shoulder, and reported that when Defendant Green gently pressed on his head, it caused pain in his back. Green Decl. ¶¶ 9-10.

Based on Defendant Green's training and expertise, he found Plaintiff's conduct suspicious. Plaintiff's conduct raised red flags because Defendant Green thought that Plaintiff was dishonest during the appointment, and it appeared he was focused primarily on obtaining additional morphine. Green Decl. ¶ 11.

Plaintiff is a former heroin addict, and a chrono in his UHR indicated that an LVN at PVSP caught Plaintiff concealing morphine under his tongue in February 2009. Green Decl. ¶ 6. Narcotics in a prison setting are extremely valuable, as inmates will frequently attempt to "cheek" medication so that they can sell it or trade it later. Green Decl. ¶ 7.

Plaintiff did not exhibit any signs of morphine withdrawal at the August 10, 2010, appointment. Green Decl. ¶ 12.

During the examination, Defendant Green saw Plaintiff enter the clinic hunched over and limping on one leg. However, when Plaintiff left the clinic, he switched the limp to the other leg. Defendant Green also watched Plaintiff walk across the yard with a steady pace and without the assistance of a cane or walker. Green Decl. ¶ 21.

Based on his training, medical experience, examination of Plaintiff, and review of Plaintiff's UHR, Defendant Green determined that there was no medical justification to prescribe morphine.

In Defendant Green's medical opinion, Plaintiff was not experiencing the pain he complained of, but was making statements and attempting to create findings on examination that were not consistent with his history, claimed pain, or claimed limitation of movement. Green Decl. ¶ 12. Based on Defendant Green's experience working in a prison, if an inmate truly in

pain and wants medication, the inmate does not insist on a specific narcotic, such as morphine. Green Decl. ¶ 15.

In Defendant Green's medical opinion, and from his experience working in a prison, Plaintiff specific and adamant demand for only morphine indicating drug-seeking behavior, possibly for monetary gain, instead of genuine pain. Green Decl. ¶ 15.

Plaintiff next saw Defendant Green on September 22, 2010, for continued complaints of low back pain and new claims of neck pain. Plaintiff rated his pain as a 9 out of 10, and stated that he was taking Motrin. Plaintiff also admitted to illegally buying Naproxen off the yard. Defendant Green believed that Plaintiff's pain rating was inflated given his lack of physiological symptoms. Green Decl. ¶ 22.

Defendant Green was concerned that Plaintiff was self-medicating and had risks of overdose. Plaintiff again demanded morphine and stated that he should be in no pain at all. Green Decl. ¶ 23.

On examination, Plaintiff had full-range of neck motion, no muscle wasting, no muscle spasms and no tenderness to the neck with palpations. Plaintiff had no deformity of his back. When Plaintiff was distracted or talking during the examination, he exhibited no pain response to the physical examination. Green Decl. ¶ 24.

Defendant Green also observed Plaintiff walk well into the clinic, with normal gait and no limping. When Plaintiff entered the examination area, however, Defendant Green saw him hunched over and making a shuffling movement with his feet. Green Decl. ¶ 25.

When Defendant Green explained that it was not medically necessary for Plaintiff to be prescribed morphine, and prescribed Indocin (a non-narcotic) instead, Plaintiff became upset and argumentative. He used lots of body movement in his head, shoulders, neck and back as he gestured to demonstrate his disagreement with the medical determination. While he moved, Plaintiff did not display any facial or body language to indicate pain. Plaintiff also kept changing the subject rapidly to complain of pain in different areas of his body. Green Decl. ¶ 26.

Based on his medical opinion, Defendant Green believed that Plaintiff was again "fishing," or trying to say different things to see what, if anything, would convince him to prescribe morphine. This was a sign of drug-seeking behavior and Defendant Green determined that Plaintiff was hyper-inflating his pain complaints. Green Decl. ¶ 27.

Defendant Green told Plaintiff that given his age and some arthritis, it was not realistic for him to expect to be completely pain-free. Plaintiff was unhappy and Defendant Green observed him leave the clinic walking upright with no limp. Green Decl. ¶ 27.

Defendant Green's review of Plaintiff's UHR revealed no indication that any other provider had given Plaintiff morphine following the September 22, 2010, visit. Green Decl. ¶ 28.

In his medical expert opinion, Defendant Green believes that he provided Plaintiff with appropriate and lawful medical care. Green Decl. ¶ 29.

**IV.    DISCUSSION**

1.    Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, an inmate must demonstrate deliberate

indifference to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

    2.    <u>Analysis</u>

Plaintiff contends that Defendant Green discontinued his morphine at the August 11, 2010, appointment. He alleges that he did so despite Plaintiff's severe pain, and without any explanation. Plaintiff contends that Defendant Green's decision caused him to endure painful morphine withdrawals.

The following facts are undisputed: Defendant Green examined Plaintiff on August 11, 2010. During the examination, Plaintiff complained of severe pain, though the examination did not reveal any physical abnormalities in Plaintiff's shoulders. Defendant Green reviewed

8

Plaintiff's UHR.  Plaintiff was a former heroin addict, and he had been caught "cheeking" medication in February 2009.  In his medial opinion, and based on his expertise, examination and review of Plaintiff's records, Defendant Green determined that morphine was not medically indicated.  Defendant Green also believed that Plaintiff's pain was not as severe as he indicated, and that he exhibited signs of drug-seeking behavior.

While a dispute exists as to whether Plaintiff's pain was genuine, the fact remains that Defendant Greene's decision was based on his medical expertise, normal examination findings and his review of Plaintiff's UHR.

The needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  However, a difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference.  Snow, 681 F.3d at 987, (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Here, there is no evidence that Defendant Green's chosen of course of treatment, which was to discontinue Plaintiff's narcotic pain medication, was medically unacceptable under the circumstances, and that he chose this course in conscious disregard of an excessive risk to Plaintiff's health.  In the absence of any evidence that it was medically unacceptable for Defendant Green to have discontinued Plaintiff's morphine, Plaintiff has not shown deliberate indifference with respect to his complaint of pain.  Id.

Moreover, as a lay witness, Plaintiff is not qualified to render an opinion that Defendant Green should have prescribed a certain type of pain medication, i.e., morphine, and that his

9

decision was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. Although the parties disagree regarding the extent of Plaintiff's pain, that dispute does not create a triable issue of fact given Defendant Green's uncontroverted evidence that in his opinion, morphine was not medically justified at the time of the August 11, 2010, examination.

Finally, although Plaintiff contends in his opposition that Defendant Green discontinued his morphine without "medical knowledge as to [his] condition," there is no dispute that Defendant Green examined him on August 11, 2010, and reviewed his UHR prior to making his decision. ECF No. 47, at 1. Plaintiff does not cite to, or discuss, any evidence to bring these facts into dispute.

Plaintiff also alleges that Defendant Green discontinued his morphine without explanation. Defendant Green contends that he explained his decision to Plaintiff, and also counseled him on how to manage his blood pressure and diabetes, and how to use his inhaler. Green Decl. ¶¶ 13-14. This disputed fact, however, does not alter the analysis. As explained above, there is no indication that Defendant Green's decision was medically unacceptable under the circumstances. At the most, Defendant Green's failure to explain the decision to Plaintiff may constitute negligence, but an Eighth Amendment claim may not be premised on even gross negligence by a treating source. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

## V.      FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant Green's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within fourteen (14) days from the date of service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **October 17, 2014**                  /s/ *Dennis L. Beck*
                                                                           UNITED STATES MAGISTRATE JUDGE